If I could reserve two minutes for rebuttal. Absolutely. Sentencing took place in this case prior to this Court issuing its en banc decision in United States v. Contreras. In that decision, the Court redefined and significantly narrowed the test for abusing a position of trust. Under Contreras, an enhancement for abusing a position of trust is only appropriate if the defendant held a position that was characterized by professional and managerial discretion, a position where the inherent nature of the work conveys a substantial degree of discretion, and that position substantially facilitated the offense. Well, didn't Mr. Johnson have discretion over the terms of this case? Yes, he did have discretion. However, that discretion did not flow from his position in the transaction. His position in the transaction first was, from the perspective of the victim, Bill Britt, Johnson was a businessman like Mr. Britt was, and he was not in the business of investing other people's capital, but he was believed to be a wealthy private businessman that invested his own capital. They drew up a joint venture contract, and the joint venture contract, and this is key, provided that Mr. Johnson would have no discretion whatsoever. He had to get Bill Britt's permission to use the money in any way whatsoever. Another aspect of his position was both men were private account holders at the May Davis Brokerage. Mr. Britt, the victim, had a broker at that brokerage who stood ready to enforce his rights under that contract. And at any point, at any point during this case, from the very beginning, Britt, after Mr. Britt gave his money to Mr. Johnson, he always had the power to instruct Mr. Jacobs to transfer the money back. Mr. Jacobs was aware of the terms of their contract from Mr. Britt and stood ready to transfer Mr. Johnson's Mr. Britt's money out of Mr. Johnson's account. Why did he lose all his money? Because he personally trusted Mr. Johnson. That's why he lost his money. Mr. Johnson did have discretion and freedom with the money. Absolutely. He converted the money. He concealed that conversion for months. And he up, you know, for months, he successfully executed his fraudulent scheme. But he did so through personal trust, through fostering personal trust in the victim, and then manipulating that personal trust, violating it. And well before Contreras, this Court has held that personal trust, the violation of personal trust, as opposed to a position of public or private trust, is not relevant for this enhancement. It's not simply being in a position of being trusted by the victim, but rather holding a position that the victim believes to be a legitimate position of public or private trust. Mr. Jones. Yes, sir. Forgive me, but I, you know, I look at the record at ER 135, 136, ER 118. There are all kinds of references in here to the fact that Mr. Johnson controlled. He was given control of the money. It was to be done at the discretion of the administrator, meaning him. He prepared a letter for Britt to sign stating that Britt transferred into Zurich Capital Holdings account the sum of $5,750,000, which is at the discretion of Mr. Johnson, and on and on and on. I mean, isn't that a private trust? Why is that anything other? It's a personal trust. But it's a private trust, right? I think no. I don't believe so, Your Honor. I think that's distinct. I think personal trust is very much not a private trust. A private position of trust, and I can give you the case. A private position of trust would be a doctor, a doctor, a doctor, an attorney. A public trust is a police, is a government official. A private trust is a position of trust that's not a government official. A decision by this. But that's exactly what this gentleman did, right? I think if one distinguishes between personal trust and a position of trust. He was in a position of being personally trusted, no question. But that's not how the term position is used in the guidelines. It's a position of trust. With respect to counsel, isn't that just sophistry? I mean, if you and I entered into a transaction, we created an intervivals trust, and I said that Mr. Jones is going to be the trustee of my personal trust, and I put, I wish I had a million dollars in there, and you were going to invest it for me, and you stole it. What's any difference between that and what's happened in this case? I think the difference, I think the chief difference would be the terms of our contract. If the contract gave me that discretion, and then it insulated me from your, from your, you under the legitimate terms of our transaction, you had no control. And then I abused that discretion that you gave me. That's a position of trust. If, on the other hand, the contract says you have absolute control, you can stop me any time you want to. But that's not what this says. This says that your client had control. No, the contract here said that Mr. Brett always had control. And he, Mr. Brett testified extensively about the terms of the contract, and the contract is in the excerpts of the record as well. But, but more critical is this is from the perspective of the victim. And Mr. Brett gave extensive testimony about what he felt the terms of the contract provided to him, and that Mr. Johnson would never have control of my money, that Mr. Johnson had no discretion with my money, that he had to obtain my approval before he did anything with the money. But he didn't. He didn't through exercising personal influence. For instance, the interaction between Mike Jones, between. Counsel, Judge Gould. I'm sorry. I've got a question for you, if you've completed that answer. I really have trouble seeing an investment advisor as not being in a position of trust. So I want to put a hypothetical to you. When when the average person deals with a broker, you know, say at Merrill Lynch or any kind of brokers like that, they can control the transactions and instruct the broker what to do. And the broker is supposed to do what they say. But still, if the broker, unbeknownst to them, abuses his position by doing something different than what he or she was asked to do, isn't that an abuse of a position of trust? Yes, that would be that would be. If that is that, why is it pertinent if Britt could have told Johnson what to do on an investment? Well, when you have a licensed I think a licensed investment broker is a classic is a classic position of private trust. They are licensed. There's a there's a there's a legal there's a fiduciary duty spelled out in the law that the that the broker owes his clients. And I think it's the epitome of a position of trust because because you have a licensed broker and there's a fiduciary duty, notwithstanding any contract between between the parties, the client in that case trusts that broker, not because of personal representations, but because of that position. And in this case, that that's that relationship didn't exist because Mr. Johnson was known this was not known to Mr. Britt to be someone who was in the position of investing other people's money. And I think when you have when I just give my money to someone to invest because they tell me I'm good at investments, let me take your money and we'll make you know, we'll make we'll make a return on that. I don't think that I'm giving my money to a professional that's in the business of investing other people's money and whose role is defined by law as a fiduciary. And I think that's it. Thank you. Yes, sir. Thank you. Thank you, sir. We'll hear from the government. May it please the Court. Ruth Pinkle for the United States. Your Honors, in this case, although the Contreras case did clarify the law in the circuit, it really didn't change anything with respect to the facts of this case. The defendant in this case did hold himself out to the victim as being a legitimate investment advisor, which is the test for the abusive position of trust is whether or not, first, someone was in the position of a managerial discretionary position, and, two, whether that position facilitated the fraud. In this case, it was undisputed at sentencing that the defendant had held himself out to the victim as being an investment banker and that he would invest money for the victim. And under Application Note 3 of the sentencing guidelines, the enhancement applies for someone who holds themselves out to a victim as being a legitimate investment advisor when, in fact, they aren't an investment advisor. And that clearly was the case here. Those facts were undisputed at sentencing by the defendant. And under well-established authority in this Court, the sentencing court could accept those facts as true and as proving the underlying enhancement for the abusive position of trust. Kennedy. What's our standard of review on the issue of the two-level enhancement? Is it abusive discretion or is it something else because you said it wasn't raised or there was no objection made by the defendant at the time of the sentencing? Your Honor, I could submit further briefing to the Court on that. I do not know what the standard of review is on that point. Okay. Anything further on that point? If not, I've got a question about the redacted version of the grand jury transcript. I gather the government provided the what's labeled Exhibit D, is that correct? And then we have under seal Exhibit A, and it's up to us to compare to see if there's any JANCSAC violation. Yes, Your Honor. If I could just grab mine. Sure. Yes, Your Honor. Exhibit B is what was produced during discovery, and Exhibit A were the redacted pages. Were the redacted pages. Yes. Anything further? Your Honor, I would just point out that this relationship between the defendant and the victim, Bill Britt, is not purely a contractual relationship. The joint venture contract itself provides that the defendant would be investing money and finding investment opportunities for the victim, which suggests that he was in the position of being the defendant, of being an investment advisor for this victim. What about the distinction which Mr. Jones has been trying to make in his oral argument this morning? How do you respond to that? The distinction between private and public trust, Your Honor? Well, the distinction he was trying to make, I'm not going to re-characterize it for him. Well, Your Honor, in this case, the victim didn't have any control over the money. He gave the money to Johnson. It went into an account. And as soon as he interprets the agreement to give him ultimate control over the money, how do you deal with that? Well, I think the reality is that this agreement is, this is not like a normal contractual relationship between parties in the outside world. This kind of private placement agreement is typical of what's called a prime bank fraud, which is what this is. And this contract is window dressing that is intended to give the victim some kind of security and assurances that this is, in fact, a legitimate investment transaction, where it is not. So I think to try to consider this a simple breach of contract situation would be incorrect under the fact of this kind of fraud. Anything further? No, Your Honor, unless the Court has any further questions. No further questions. None here. Mr. Britt has testified extensively in this case. So it's not a case where the pre-sentence reports, conclusory statements, the record is very clear on what Mr. Britt's perspective was. Let's look at the record here. I'm looking at, I don't know how to quite identify this. I don't see where it is in the excerpt. It's a record. It's Exhibit 65, page 3, USAO 1427. And this is part of an alleged contract describing nature of performance. It talks about contributing $10 million. And it says that the fund shall be in an account controlled by the administrator, which is your client, and may be transferred, withdrawn, hypothecated, liened, or encumbered in any manner at the discretion of the administrator. It says, and the approval of the depositor during the term. Now, the fact is, he gave him that discretion. He did not seek the approval of your client. Doesn't that in and of itself undercut your argument? I believe no, Your Honor, it doesn't, because under the contract is not illusory. Britt did have ultimate control.  I'm not talking about the fact that under the contract he may have had that ultimate control. The reality is he set it up so your client had complete discretion. Theoretically, your client was supposed to talk to the victim. He didn't. He didn't. And the reality is, here's another letter, Exhibit 70, page 2, from Bill Britt on page 2. He says, I'm a very busy man with many, many transactions going on simultaneously, so I have chosen to leave the daily decisions regarding this transaction to Mr. Johnson and Mr. Jacobs, with Mr. Johnson making 100 percent of the decisions and Mr. Jacobs overseeing the process. So as far as Mr. Britt was concerned. That's the letter to Dave Serena? Beg your pardon? That's the letter to Dave Serena, the compliance officer? That's correct. Yes. So the reality is, at least from Mr. Britt's perspective, all the discretion was in your client. The letter to Dave Serena, Bill Britt testified regarding that letter and said that he said what he said. He specifically said he said that to tell the compliance officer to go away and that he regarded it as not defining their relationship in the contract, that he thought it was what the compliance officer needed to hear. And in that same testimony, on the same page, he's saying that I had complete control over the money. Thank you very much, Counselor. Your time has expired. Thank you. The case just argued will be submitted for decision.
judges: O'scannlain, Gould, Smith M.